The People of the State of New York, Respondent, v
Richard S. Raco, Appellant.

Third Department, May 24, 1979

APPEARANCES OF COUNSEL

*Douglas P. Rutnik (Peter Porco* of counsel), for appellant.

*Sol Greenberg, District Attorney (George H. Barber* of counsel), for respondent.

## OPINION OF THE COURT

HERLIHY, J.

The defendant, on or about April 16, 1976, applied for New York registration of a 1976 Ford vehicle with identification number F15 JKA 57079. In support of that application he submitted a Florida certificate of title and on that basis the local motor vehicle office supplied him with a certificate of registration for the described vehicle. On or about May 19, 1976 a New York State certificate of title was issued by the Department of Motor Vehicles for the described vehicle. On or about June 17, 1976 the defendant sold the vehicle to Arthur C. Coons for a substantial sum of money.

Subsequent to the sale to Coons, the Department of Motor Vehicles and the New York State Police became convinced that the Florida certificate of title was not valid and the police seized the vehicle from Coons on or about July 26, 1976.

The defendant was indicted in April of 1977 for the crime of criminal possession of stolen property (first degree) and also for the crime of criminal possession of a forged instrument, both crimes allegedly occurring on June 17, 1976. Following the trial and a jury verdict of guilty on both counts of the indictment, the court dismissed the criminal possession of a forged instrument count and it is not before us on this appeal. The defendant did not testify and the primary issue upon this appeal is whether or not the People proved the crime of criminal possession of stolen property beyond a reasonable doubt.

The issues discussed herein were raised on appeal by points 2 and 3 of the *"pro se"* brief.

The record is doubtful as to the sufficiency of the evidence to show that the vehicle sold by the defendant to Coons was in fact a stolen vehicle. The crime of criminal possession of stolen property requires a "knowledgeable" possession. The record establishes that whatever alterations in identification number occurred on this vehicle, they did not necessarily occur while in the defendant's possession. Further, there is no evidence to show that the presence or absence of the ordinary identification number emblems would probably alert a possessor to the fact that the vehicle was stolen (cf. *People v Bolling*, 60 AD2d 655).

■ The record establishes that the defendant obtained evidence of title on or about September 29, 1975, the issuing date on the Florida certificate of title. The record contains probative evidence which was apparently believed by the jury that the Florida certificate of title was counterfeit or bogus and, in fact, the State of Florida had never issued a title certificate for the vehicle described thereon.

In the case of *People v Von Werne* (41 NY2d 584) the court considered the question of knowledge of illegality when applied to the possession of automobiles as stolen property. It was specifically noted that to prove knowledge of illegality it was not necessary that circumstantial evidence "exclude 'to a moral certainty' every reasonable hypothesis of innocence". (41 NY2d 584, 590.) The defendant in his statement of facts notes that: "Sometime on or about November 29th or 30th, 1975, a 1976 Ford pickup truck disappeared from a dealer's lot in LaBelle, Florida. Sometime thereafter a bogus Florida certificate of title was generated bearing the name of the defendant-appellant, Richard S. Raco and dated September 29, 1975." Notably, while the present record would tend to establish that the defendant might have received the "bogus" title by mail in an innocent manner, there is nothing to explain the fact that the title certificate was issued prior to a time when a legitimate owner of the vehicle at issue had been robbed of the vehicle. Further, the record establishes that the vehicle and the invalid Florida title certificate had different vehicle identification numbers, and there is nothing to explain how or why the defendant used the license plates issued for the identification number on his invalid title certificate as proper registration for the vehicle. In regard to the identification numbers not matching, there was testimony elicited by the defendant's counsel on cross-examination that the number

on the invalid title certificate was changed by one digit from that on the vehicle "to avoid detection".

In addition to the proof relating to the vehicle identification number and the date of the title certificate and vehicle theft, there was evidence that a certain decal and plate having the appropriate vehicle identification number were removed from the vehicle.

While the foregoing evidence would not be overwhelming as to a certainty of guilty knowledge, it is sufficiently close in nature to that in *People v Von Werne (supra)* to sustain the conclusion that the evidence was sufficient to establish guilt of criminal possession of stolen property beyond a reasonable doubt. (See *People v Silver,* 39 NY2d 99; *People v Bolling, supra;* cf. *People v Knapp,* 46 AD2d 691.) The inferences and conclusions to be drawn from the evidence were for the jury.

█ The defendant in his supplemental *(pro se)* brief also contends that the prosecutor and court committed reversible error by permitting a police investigator to give testimony over objection that in his opinion: (1) vehicles with missing identification plates and decals are stolen vehicles; (2) that "professional" car thieves destroy original certificate numbers and get new title documents to sell the car; (3) that "professionals" take cars from one State to another for registration. A reading of the testimony admitted as expert testimony on the *modus operandi* of professional auto theft rings in the context of this record leaves no doubt that a juror would find it hard not to believe that the vehicle was stolen by the defendant as a "professional", and/or as part of a "ring". The respondent in his brief makes no attempt to justify the offer of such evidence except that it was from an "expert" and that the court has found the evidence to be relevant. In evaluating this evidence, it is necessary to note that the defendant was not being charged as an accomplice in the theft of the vehicle.

It is apparent that the police officer's exposure to vehicles that had in fact been stolen may have revealed that they could have missing decals or identification plates, but such exposure offers no basis for expert testimony that a vehicle missing a decal or an identification plate or both was in fact a stolen vehicle. While the court was careful to rule that the policeman could not give an opinion as to whether or not this vehicle was stolen, the distinction in this case does not preclude the evidence from actually impinging on the function of the jury and it should have been excluded.

In *People v Creasy* (236 NY 205, 222-223), cited in *Kulak v Nationwide Mut. Ins. Co.* (40 NY2d 140, 148), the Court of Appeals stated: "Facts are the appropriate subject of evidence. Inferences and conclusions to be drawn therefrom are for the jury. Opinion evidence is never allowed, except when from the nature of the case the facts cannot be stated in such a manner as to enable the jury to form an accurate judgment therefrom, and no better evidence than such opinions is obtainable. *(Noah v. Bowery Savings Bank,* 225 N. Y. 284; *Schutz v. Union Ry. Co. of N. Y. City,* 181 N. Y. 33; *People v Underhill,* 142 N. Y. 38; *Ferguson v. Hubbell,* 97 N. Y. 507; *Keefe v Armour & Co.,* 258 Ill. 28; *People v Curtright,* Id. 430; *Hite v. Keene,* 149 Wis. 207; 1 Greenleaf on Evidence, sec. 440 and note.)"

With reference to expert testimony of an attorney in an action against an insurer for failure to settle an automobile liability claim within policy limits, in *Kulak v Nationwide Mut. Ins. Co. (supra,* p 148) the court said: "While it might be suggested that an experienced trial attorney—or even an observant court attendant—who has had frequent occasion to observe the results of juries' deliberations in personal injury actions might be expected reliably to predict the outcome in a particular case, we know of no empirical support for such a conclusion. Moreover, any such result would be based on exposure rather than expertise, and would treat of subject matter calling for no special scientific or professional education, training or skill. Any experience advantage enjoyed by such witnesses would not establish the inability or incompetence of jurors, on the basis of their day-to-day experience and observation, to comprehend the issues, to evaluate the evidence, and finally, to estimate the likely outcome of a specific action *(Ferguson v Hubbell,* 97 NY 507, 513-514). Absent such inability or incompetence, the opinions of experts, which intrude on the province of the jury to draw inferences and conclusions, are both unnecessary and improper *(Meiselman v Crown Hgts. Hosp.,* 285 NY 389, 396; *People v Creasy,* 236 NY 205, 222-223)."

In researching this issue,* there has failed to come to light any action involving possession of a stolen vehicle and the

---

* For a summary and review of expert testimony as to the *modus operandi* of criminals, see 100 ALR2d 1433. Of particular interest is the case of *People v Clay* (227 Cal App 2d 87; Ann. 100 ALR2d 1421) where the court permitted the use of a hypothetical question in a prosecution for burglary and grand larceny in establishing the practice of "till tapping".

admission into evidence of expert testimony similar to that admitted in this action.

We conclude, however, that while testimony as to the distinction between amateurs and professionals would undoubtedly be useful at a sentencing proceeding, it was by any view immaterial and irrelevant in the present case on the issue of knowledge. At best, it would have tended to establish that the vehicle was stolen by a "professional", but there was nothing to link the defendant with such a theft except surmise and speculation.

If it could be concluded, under New York law, that the evidence as to *modus operandi* was admissible, in any event, the foregoing "expert" evidence should have been excluded. It was clearly prejudicial to the defendant in this case where all of the evidence of guilt is circumstantial and/or hearsay and was not necessary in order for the jury to form an accurate judgment as to whether the defendant was guilty of the possession of stolen property.

Having so determined, we additionally find that the summation of the District Attorney with reference to this aspect of the case was prejudicial.

Accordingly, there must be a reversal of the judgment and a remittal for a new trial *(People v Von Werne,* 41 NY2d 584, *supra; Kulak v Nationwide Mut. Ins. Co.,* 40 NY2d 140, *supra).*

The judgment should be reversed, on the law and in the interest of justice, and a new trial ordered.

MAHONEY, P. J., SWEENEY, KANE and MAIN, JJ., concur.

Judgment reversed, on the law and in the interest of justice, and a new trial ordered.