■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS PUGH, JR., Appellant. [667 NYS2d 465] —Peters, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered November 27, 1995, upon a verdict convicting defendant of the crimes of rape in the first degree (two counts) and sodomy in the first degree.

In the early morning hours of March 25, 1995, the victim, a 29-year-old cocaine addict and prostitute, ran naked through the streets of the City of Binghamton, Broome County, knock-

ing on apartments until someone finally answered the door. William Covington, upon opening the door to his home, gave the victim a robe and called the police. She was upset and crying and her face was bruised.

Police investigation revealed that the victim had been hiding out at the apartment of Sandra Bentz, an exotic dancer, attempting to avoid defendant. On the morning of March 25, 1995, defendant arrived at Bentz's apartment and, when he saw the victim, he began slapping her and demanding that she pay him money for drugs she had been holding for him. As defendant contended that he "owned" her, she returned with him, at his insistence, to the apartment of Duane Puryea where defendant had recently been staying. After repeated physical and sexual assaults, a moment came when defendant left the room and an opportunity for escape was presented.

After interviewing the victim and arranging for her transportation to the hospital, police officers went to Puryea's apartment in an attempt to locate defendant. Speaking to Puryea and receiving permission to enter, the officers looked in a back bedroom and viewed what appeared to be the victim's clothes and purse on the floor. The bedroom was secured for further investigation and later, upon the written consent of Puryea, a search of the bedroom occurred. According to Puryea, defendant had been staying at the apartment "on and off" for a few months and the bedroom in which he slept was also used by Puryea as a guest room for his ex-girlfriend and his daughter.

Upon arrest, defendant was charged with and eventually indicted for rape in the first degree (two counts) and sodomy in the first degree. After pretrial hearings, including a suppression hearing in which County Court denied defendant's request to suppress his statements and the physical evidence seized from the back bedroom, the matter went to trial. Numerous witnesses, including the victim and Puryea, testified at trial. The District Attorney contended that despite the victim's criminal record and prior immoral conduct, she deserved the same protection as all other crime victims.

The jury convicted defendant of all counts of the indictment and he was subsequently sentenced to concurrent prison terms of 10 to 20 years on each first degree rape charge as well as 10 to 20 years on the first degree sodomy charge. He appeals, contending that County Court erred when it denied his motion to suppress the physical evidence seized in his bedroom and when it refused to declare a mistrial after one of the People's witnesses violated County Court's *Ventimiglia* ruling (*see, People v Ventimiglia*, 52 NY2d 350). Further contending that

the verdict of the jury was not based upon legally sufficient evidence or supported by the weight of the evidence, defendant concludes by asserting that the sentence was harsh and excessive.

Our review begins with the denial of the motion to suppress the physical evidence. Noting that great weight should be accorded to the finding of the suppression court (*see, People v Prochilo*, 41 NY2d 759, 761), we find that County Court properly concluded that Puryea, as the legal tenant of the apartment, possessed common authority over the bedroom at issue to empower him to consent to its search (*see, United States v Matlock*, 415 US 164; *People v Cosme*, 48 NY2d 286; *People v Sloan*, 242 AD2d 760; *People v Qazi*, 220 AD2d 464, *lv denied* 87 NY2d 976).

Defendant's *Ventimiglia* argument need not detain us either. Upon a *Ventimiglia* hearing, County Court determined that the People would be permitted to present testimony only to the effect that defendant claimed that the victim owed him money, not that such money pertained to drug transactions. When Bentz nonetheless testified that defendant came into her apartment and yelled that "he either wanted his money or he wanted his drugs", the court immediately issued a curative instruction, prompting defendant to move for a mistrial. County Court refused, warning the prosecution that if there was any further mention of drug transactions it would grant the mistrial. Although County Court offered to issue a second, stronger warning to the jury, defendant declined that offer, contending now that a mistrial should have been granted. We disagree. As the fleeting reference to the subject matter of drugs was quickly responded to by the court with a curative instruction, we find no abuse of discretion in failing to order a mistrial (*see, People v Mullins*, 221 AD2d 770, *lv denied* 87 NY2d 1022, 88 NY2d 851 ).

Viewing the evidence in a neutral light and deferring to the jury's resolution of credibility issues, we find that despite the victim's sordid past upon which she was extensively cross-examined (*see, People v Batista*, 235 AD2d 631, *lv denied* 89 NY2d 1088), the verdict was not against the weight of the evidence and was supported by legally sufficient evidence (*see, People v Bleakley*, 69 NY2d 490).

As to the sentence imposed, again we find no error or extraordinary circumstances warranting our reduction thereof (*People v Fish*, 235 AD2d 578, *lv denied* 89 NY2d 1092; *People v MacDonald*, 227 AD2d 672, *affd* 89 NY2d 908; *People v Du Bray*, 76 AD2d 976) given defendant's criminal history and his adjudication as a second violent felony offender.

Mikoll, J. P., White, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the judgment is affirmed.